WILLIAM HAMER, APPELLANT, V. TRAVIE HENRY, DOING BUSINESS AS SCOTIA WELDING, APPELLEE.

341 N.W.2d 322

Filed December 2, 1983.   No. 83-112.

Charles R. Maser of Connors & Maser, P.C., for appellant.

Walter E. Zink II of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

This is an appeal from the Nebraska Workmen's Compensation Court which dismissed the plaintiff's petition because he failed to prove by a preponderance of the evidence that his disability resulted from an accident arising out of and in the course of employment, as defined by the Nebraska workmen's compensation law.

The plaintiff, William Hamer, filed this action seeking an award for injuries sustained to his neck while he was working at Scotia Welding for the defendant, Travie Henry. A single-judge court determined that his injuries were compensable for temporary total disability through June 14, 1982, and to continue so long as the plaintiff remained temporarily totally disabled. Following an application for rehearing filed by the defendant, the three-judge panel entered its order dismissing the petition.

On September 18, 1981, while working under a truck hoist, Hamer first experienced problems when he felt a catch in his neck while walking away from the equipment he was working on. In the petition Hamer alleged the injury was sustained while he was driving bolts with a sledge hammer and lifting a heavy shaft. At the first workmen's compensation hearing Hamer testified he felt the catch when he turned away to get some tools, while at the second hearing, or rehearing, Hamer told the court the injury occurred while he was pushing on a hydraulic cylinder.

After the "catch" or "popping" on Friday afternoon, Hamer finished work for the day and returned

to his home. When the pain did not leave by the following Monday, September 21, 1981, the plaintiff sought medical attention from Dr. Timothy Dunagan, a chiropractor in Grand Island. Dr. Dunagan diagnosed the injury as a cervical sprain with radiating brachial neuralgia of the extension of the C-7 dermatome, but also noted Hamer had previously experienced occasional episodes of neck soreness and stiffness, and that X-rays indicated an abnormal lordosis or curve of the spine, which Dunagan thought was a substantial and material contributing factor of Hamer's problem.

Besides the chiropractic examination, the plaintiff's condition was also evaluated by several physicians. The depositions of those doctors were received in evidence at the rehearing. Similar to the discrepancy of the testimony at the workmen's compensation hearings, the plaintiff's explanation of the injury varies with the recorded medical histories documented by the various physicians.

Dr. Otis Miller, the family physician, examined the plaintiff on October 8, 1981, and found a tenderness on the seventh cervical spine and pain in the neck and shoulder area. Later the injury was diagnosed as a fracture of the seventh spinous process and a chronic sprain, and Dr. Miller expected the plaintiff's problems to be resolved within 2 to 3 months. After treatment with Dr. Dunagan until December 1981, Hamer continued treatment with Dr. Miller until April of 1982, when he was referred to Dr. Gordon Bainbridge, a Grand Island orthopedic surgeon.

Dr. Bainbridge examined the plaintiff on April 20, 1982. After undergoing a standard orthopedic examination, the plaintiff was referred to Dr. Balachandran Wariyar, a neurologist in Grand Island, and to Dr. Louis Gogela, a neurosurgeon in Lincoln. Based upon his examinations, and consultations with Drs. Gogela and Wariyar, Dr. Bainbridge diagnosed the injury as a cervical sprain.

Dr. Wariyar examined the plaintiff on two separate occasions, July 20 and October 8, 1982, and after the second examination he did not find any objective neurological reasons for the plaintiff's complaint.

Dr. Gogela, who also examined the plaintiff in October 1982, said he could not provide a neurological anatomic explanation for the plaintiff's complaints.

On March 12, 1982, Dr. William Fulcher examined the plaintiff and opined that the plaintiff did not have permanent impairment and could return to work without limitation.

Other evidence reveals that during the summer of 1982, plaintiff engaged in two separate motor vehicle trips, one to Minnesota and one to Iowa. In August of 1982 Hamer was seen moving large, round bales of hay which required the plaintiff, as operator of the tractor, to turn around and watch the baler loader located directly behind the tractor. The plaintiff was also observed playing games at a church picnic.

Under the Nebraska Workmen's Compensation Act the claimant has the burden of proof to establish by a preponderance of the evidence that such unexpected or unforeseen injury was in fact caused by the employment. There is no presumption from the mere occurrence of such unexpected or unforeseen injury that the injury was in fact caused by the employment. Neb. Rev. Stat. § 48-151(2) (Reissue 1978).

This court in *Mack v. Dale Electronics, Inc.*, 209 Neb. 367, 369, 307 N.W.2d 814, 815-16 (1981), said: "The mere fact that one may become ill or experience pain during employment does not in and of itself prove that the employee is disabled as a result of an 'accident' arising out of and in the course of employment, entitling the individual to compensation under the act. In order to receive that compensation it is necessary that the employee establish that the difficulties which the employee is experienc-

ing were caused by an 'accident' as defined by the Workmen's Compensation Act.''

In the present case Hamer contends the causal connection between the injury and disability shown by the testimony of Dr. Dunagan, the chiropractor, Dr. Miller, and Dr. Bainbridge would indicate that Hamer had a cervical sprain. Hamer disregards the testimony of Dr. Fulcher, Dr. Wariyar, and Dr. Gogela. These doctors all agreed that from an organic, objective, neurological standpoint there were no reasons for the complaints and no reason not to return to work. In considering the disability Dr. Bainbridge agreed that a cervical sprain is based in large part on subjective evidence.

In *Mack* we reaffirmed the principles of law that unless the character of the injury is objective, that is, where its nature and effect are plainly apparent, then it is a subjective condition necessitating expert testimony; and that where the claimed injuries are of such a character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science. Such a question must necessarily be determined from testimony of skilled professional persons and cannot be determined from the testimony of unskilled witnesses having no scientific knowledge of such injuries. The employee must show by competent medical testimony the causal connection between the alleged injury, the employment, and the disability.

Although Hamer is able to produce some medical testimony connecting his injuries to his employment, there is sufficient contradictory evidence to support the finding of the three-judge panel of the Workmen's Compensation Court on rehearing. The rule in this jurisdiction is that triers of fact are not required to take the opinions of experts as binding on them. *Novotny v. Electric Hose & Rubber Co.*, 214 Neb. 216, 333 N.W.2d 406 (1983). In *Davis v. Western Electric*, 210 Neb. 771, 779, 317 N.W.2d 68, 73 (1982), when this court was presented with conflict-

ing medical testimony, we said that " '[a]s a general rule, where the record presents nothing more than conflicting medical testimony, this court will not substitute its judgment for that of the Workmen's Compensation Court.' "

In a proceeding to review an appeal from a three-judge panel of the Workmen's Compensation Court, this court is limited by the standard of review. In reviewing workmen's compensation cases the Supreme Court is not free to weigh the facts anew. Our standard of review accords to the findings of the compensation court the same force and effect as a jury verdict in a civil case, and after a rehearing they will not be set aside unless clearly wrong. In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workmen's Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. *Davis v. Western Electric, supra.*

Issues of causation are for determination by the fact finder. There is ample evidence in the record to sustain the findings of the Nebraska Workmen's Compensation Court. The plaintiff failed to meet his burden proving the neck injury arose out of and in the course of his employment. The determination of the Workmen's Compensation Court was not clearly wrong, and as such is affirmed.

AFFIRMED.