BITUMINOUS CASUALTY CORPORATION, APPELLANT, V. THEODORE C. DEYLE, APPELLEE.

402 N.W.2d 859

Filed March 27, 1987. No. 86-087.

Joni R. Kerr of Kennedy, Holland, DeLacy & Svoboda, for appellant.

Jeffrey H. Jacobsen of Jacobsen, Orr, Nelson & Wright, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

Bituminous Casualty Corporation (Bituminous) appeals from a judgment and order entered by the Nebraska Workers' Compensation Court directing Bituminous to pay workers' compensation benefits to the appellee, Theodore C. Deyle. The appellee, Deyle, is the president, general manager, and majority

stockholder of the insured, Deyle Construction Company (company). In addition to Deyle, the other stockholders are members of his family. The company builds homes, duplexes, small office buildings, and other small projects.

In 1959 or 1960 the company offices were moved from Holdrege, Nebraska, to Kearney, Nebraska, and a previous office building was moved from Holdrege to a lot at Johnson Lake, Nebraska, and used as a cabin. The Johnson Lake lot was leased by Deyle personally but was used for company-related entertainment as well as by Deyle and members of his family. The expenses of the cabin were paid by the company. Since 1979 Deyle received no cash wages or any bonus from the company. Instead, as president of the company, he arranged with the company to permit him to buy properties constructed by the company at cost and to resell or lease them, keeping the profit. During the course of the hearings, Deyle testified that over the past 7 years the difference between the cost of the properties constructed by the company and the retail value averaged $47,000 per year. Deyle also testified that during this same time he was provided a pickup truck by the company, as well as insurance and the use of a telephone in his home, having a value of some $3,000 per year. Deyle conceded, however, that he did not report any of this "income" as earned income for federal or state income tax purposes, nor did the company report these benefits as salary paid to Deyle.

Deyle's claim for workers' compensation benefits arose out of an accident which occurred on August 4, 1984, at Johnson Lake. Deyle and the company foreman, LaVern McConnell, had received reports that a storm had caused damage to the cabin and adjoining property. Deyle and the foreman went to the lake property to determine the extent of the damage. Deyle and McConnell took company equipment with them to the lake in order to clean up the storm damage. It appeared that the damage consisted primarily of limbs blown onto Deyle's lot from trees on an adjacent lot. The evidence would support a finding made by the Workers' Compensation Court that while Deyle was making repairs, a tree limb struck the ladder on which he was standing, causing him to fall to the ground. He sustained injuries to his back and was transferred to Omaha for

treatment. While hospitalized, he was diagnosed as having a fracture of the L-1 vertebral body. A laminectomy and posterior spinal fusion were performed on Deyle on August 6, 1984. Eventually, Deyle was transferred to the rehabilitation center at Immanuel Hospital, where he continued to be seen by a physician. He was also seen by a specialist in rehabilitation medicine. Deyle was discharged from the hospital on September 28, 1984. He continued to be seen by both the surgeon and the rehabilitation specialist.

The surgeon who had performed the laminectomy and fusion testified that, in his opinion, Deyle sustained a disability equal to 75 to 80 percent of the body as a whole. Included in that percentage was disability based upon bowel, bladder, and sexual dysfunction. In April of 1985, Deyle was seen by the rehabilitation specialist, who at that time determined that Deyle had sustained disability equal to 43 percent of the body as a whole.

Following a hearing to a single judge of the Workers' Compensation Court, an award was entered in favor of Deyle and against Bituminous. A motion for rehearing was filed by Bituminous, and rehearing was thereafter had before a three-judge panel. Following that hearing an award was again entered in favor of Deyle and against Bituminous. In making its award the three-judge workers' compensation panel found that Deyle had suffered injuries to his back as a result of an accident arising out of and in the course of his employment. He was awarded medical and hospital expenses totaling $61,229.67. The panel further determined that Deyle was temporarily totally disabled from and after August 5, 1984, to the date of the rehearing and would remain so for an indefinite period of time. Based upon what Deyle claimed were his "in kind" wages, the panel determined that Deyle was entitled to temporary total disability benefits of $200 per week. The panel further awarded an attorney fee in the amount of $1,250 and interest on the award as provided for in Neb. Rev. Stat. § 48-125(2) (Reissue 1984).

In appealing to this court, Bituminous assigns as error the following: (1) That the evidence fails to establish that the injury sustained by Deyle arose out of and in the course of his

employment with Deyle Construction Company; (2) That the evidence fails to establish that Deyle's average weekly wage was equivalent to $958.91, thereby entitling him to weekly benefits of $200 per week; and (3) That the Nebraska Workers' Compensation Court erred in determining that Deyle remained temporarily totally disabled from and after August 5, 1984, to the date of the rehearing. We believe that but for the three-judge panel's determination as to the amount of Deyle's average weekly wage and his weekly benefits, the judgment is in all other respects correct and should be affirmed as modified.

In proceeding to consider this matter and analyze the record before us, we note that we are bound by the law to the effect that the Workers' Compensation Court is the sole judge of the weight and credibility of all of the evidence and that, on appeal from an award of the Nebraska Workers' Compensation Court, this court does not reweigh the facts but accords the findings of the compensation court the same force and effect as a jury verdict in a civil case. The findings will not be set aside where they are supported by the evidence and are not clearly wrong. See, *Farber v. Mass Merchandisers, Inc.*, 223 Neb. 331, 389 N.W.2d 313 (1986); *Snyder v. IBP, Inc.*, 222 Neb. 534, 385 N.W.2d 424 (1986); *Laffin v. Nelson Enterprize*, 222 Neb. 226, 382 N.W.2d 371 (1986).

As prescribed in part by Neb. Rev. Stat. § 48-185 (Reissue 1984):

> A judgment, order, or award of the Nebraska Workmen's Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the court acted without or in excess of its powers, (2) the judgment, order, or award was procured by fraud, (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or (4) the findings of fact by the court do not support the order or award.

See, also, *Knudsen v. Metropolitan Utilities Dist.*, 220 Neb. 902, 374 N.W.2d 56 (1985); *Hare v. Watts Trucking Service*, 220 Neb. 403, 370 N.W.2d 143 (1985).

And in that regard we are further bound by the rule that

> "[i]n testing the sufficiency of the evidence to support the findings of fact made by the Nebraska Workmen's

Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be drawn therefrom."

*Hollinger v. Consolidated Motor Freight*, 223 Neb. 449, 452-53, 390 N.W.2d 518, 521 (1986). See, also, *Oham v. Aaron Corp.*, 222 Neb. 28, 382 N.W.2d 12 (1986).

With those principles in mind, then, we turn first to the question of whether the Workers' Compensation Court erred in finding that the injury suffered by Deyle arose out of and in the course of his employment.

The record seems fairly clear that under Nebraska law, but for the executive position held by Deyle, there would be little question that the accident arose out of and in the course of Deyle's occupation. That is to say that if Deyle was only an employee of the company and had been directed to the lake and instructed to clear the area of debris, no one would seriously contend that this accident did not arise out of and in the course of his employment. See, *Wilson Concrete Co. v. Rork*, 216 Neb. 447, 343 N.W.2d 764 (1984); *Chrisman v. Farmers Coop. Assn.*, 179 Neb. 891, 140 N.W.2d 809 (1966); *Sentor v. City of Lincoln*, 124 Neb. 403, 246 N.W. 924 (1933). As we observed in *Meyer v. First United Methodist Church*, 206 Neb. 607, 610-11, 294 N.W.2d 611, 613-14 (1980):

"The term 'in the course of' refers to the time, place, and circumstances of the accident. [Citations omitted.] 'The course of employment requirement tests work-connection as to time, place and activity; that is, it demands that the injury be shown to have arisen within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment.' 1 Larson, Workmen's Compensation Law, § 14.00 (1978). We therefore must focus on the activity which gave rise to the injury for which compensation is claimed and examine that activity by itself to determine whether compensation may be allowed."

Further, as we observed in *Schademann v. Casey*, 194 Neb. 149, 154-55, 231 N.W.2d 116, 121 (1975):

"Whether an accident arises out of and in the course of the employment must be determined by the facts of each case. There is no fixed formula by which the question may be resolved. * * * In determining whether a risk arises out of the employment, the test to be applied to any act or conduct of an employee which does not constitute a direct performance of his work is whether it is reasonably incident thereto, or whether it is so substantial a deviation as to constitute a break in the employment and to create a formidable independent hazard." . . . "The term 'arising out of the employment' in the Workmen's Compensation Act covers all risks of accident from causative acts done or occurring within the scope or sphere of the employment. All acts reasonably necessary or incident to the performance of the work, including such matters of personal convenience and comfort, not in conflict with specific instructions, as an employee may normally be expected to indulge in, under the conditions of his work, are regarded as being within the scope or sphere of the employment."

Deyle was not at the cabin at the time of the accident for personal reasons or to engage in personal recreational activity. Quite to the contrary, he was there for the purpose of clearing the area of debris caused by a storm. Obviously, the company had one of two choices—it could either use its own employees or hire others. We believe we would be hard pressed to deny coverage to Deyle had he been sent to the site by his employer with instructions to clear the area. Therefore, the real question is, Does the fact that Deyle is the president of the company thereby preclude him from recovering under the workers' compensation laws of Nebraska when engaging in work which results in injury?

In 1984 the Legislature clearly indicated its intent when it enacted Neb. Rev. Stat. § 48-115(3) (Reissue 1984), which provides in part: "Every executive officer of a corporation elected or appointed under the provisions or authority of the charter, articles of incorporation, or bylaws of such corporation shall be an employee of such corporation under the provisions of Chapter 48, article 1 . . . ."

We are unable to envision how the Legislature could have made it any clearer that it intended to bring officers of a corporation within the ambit of the Nebraska workers' compensation law and within the definition of "employee" for purposes of the Nebraska workers' compensation law. The issue here is not whether an individual engaged in business, not incorporated, may bring himself or herself within the definition of "employee" within the meaning of the Nebraska workers' compensation laws, see *Williams v. Williams Janitorial Service*, 207 Neb. 344, 299 N.W.2d 160 (1980), but, rather, whether an executive officer of a business, incorporated under the laws of Nebraska, is within the definition of "employee."

As we observed in a not too dissimilar situation in the case of *McGee v. Panhandle Technical Sys.*, 223 Neb. 56, 61, 387 N.W.2d 709, 713 (1986): " ' "A corporation is a complete entity separate and distinguishable from its stockholders and officers and if it sees fit to have one of the latter serve it in the capacity of an ordinary employee we see nothing to prevent it from so doing." ' " We believe that by reason of both the provisions of § 48-115(3) and the laws of Nebraska which recognize that a corporation is a separate legal entity, we must conclude that under the facts in this case Deyle was an employee of the construction company and sustained an injury as a result of an accident arising out of and in the course of his employment. We therefore conclude that the Workers' Compensation Court was correct in determining that Deyle was an employee and sustained an injury as a result of an accident arising out of and in the course of his employment.

We have greater difficulty with the panel's conclusion that the evidence was sufficient to establish that Deyle had an average weekly wage of $958.91. We reach that conclusion because we do not believe, as a matter of law, that the evidence supports the claim that Deyle was in fact receiving any compensation for performing his duties as executive officer of the company. The fact that he had an arrangement with the company whereby he was permitted to buy from the company properties at the company's cost and to resell or lease them at whatever price he might obtain does not, in our view, sustain the employee's burden to establish the wages which the

employee received. This position is further bolstered by the fact that no agreement was reached in advance as to the value of the "wages" received by this arrangement, nor did Deyle or the company think it appropriate to report such sums as either an expense of the company by way of salary upon which social security would be paid or as income to Deyle upon which income tax would be paid. It was obviously a convenient arrangement made between Deyle and the company over which he had full control. Every such arrangement, however, does not constitute wages within the meaning of the Nebraska Workers' Compensation Act.

Neb. Rev. Stat. § 48-126 (Reissue 1984) defines wages for purposes of the Workers' Compensation Act, providing:

> Wherever in this act the term wages is used, it shall be construed to mean the *money rate* at which the service rendered is recompensed under the contract of hiring in force at the time of the accident. It shall not include gratuities received from the employer or others, nor shall it include board, lodging, or similar advantages received from the employer, unless the money value of such advantages shall have been fixed by the parties at the time of hiring . . . .

(Emphasis supplied.)

While we recognize that it may be possible for the company to provide an officer/employee with benefits equal to cash and constitute wages, see *Loeffelholz v. Allied Mut. Ins. Co.*, 183 Neb. 112, 158 N.W.2d 219 (1968), we do not believe that the evidence in this case is sufficient to establish that the employer and employee had any understanding as to what the value of those "wages" were or recognized them as being wages.

Having therefore determined that no wages were paid, it necessarily follows from the language of the Nebraska Workers' Compensation Act in effect at the time of the accident that Deyle is not entitled to receive any compensation other than the payment of his medical bills.

Neb. Rev. Stat. § 48-121(1) (Reissue 1984), applicable at the time of the injury, provided in part: "[I]f at the time of injury the employee receives wages of less than forty-nine dollars per week, then he or she shall receive the full amount of such wages

per week as compensation." This was amended in 1985, but such amendment has no application in the instant case. See Neb. Rev. Stat. § 48-121.01 (Cum. Supp. 1986). See, also, *Osteen v. A. C. and S., Inc.*, 209 Neb. 282, 307 N.W.2d 514 (1981); *Chadd v. Western Cas. & Sur. Co.*, 166 Neb. 483, 89 N.W.2d 586 (1958).

If, as we have determined, the Workers' Compensation Court was correct in determining that Deyle was an employee but was not receiving any wages, then we must conclude that he is not entitled to receive more than his weekly wages, or, in this case, nothing.

To the extent that the Workers' Compensation Court granted Deyle the maximum benefits rather than nothing, the judgment is in error and must be reversed.

That leaves us then with only the last question, whether the evidence was sufficient for the Workers' Compensation Court to determine that Deyle was temporarily disabled. In view of the fact that we have determined that Deyle was not entitled to receive any weekly benefits because he had received no wages before his injury, we need not address that issue.

The judgment of the three-judge panel of the Workers' Compensation Court is affirmed except as modified herein.

AFFIRMED AS MODIFIED.