MARY K. SANCHEZ, APPELLANT, V. FRANK N. DERBY AND BLANCHE CONRAD, APPELLEES.

433 N.W.2d 523

Filed January 6, 1989. No. 86-360.

Daniel B. Cullan and Virginia L. Cullan, of Cullan & Cullan, for appellant.

Daniel P. Chesire and James L. Schneider, of Kennedy, Holland, DeLacy & Svoboda, for appellee Conrad.

Edward G. Warin and Lynn A. Mitchell, of Gross, Welch, Vinardi, Kauffman & Day, P.C., for appellee Derby.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM. Upon rehearing and reargument, we find that the trial court abused its discretion when it limited the testimony of a board-certified neuropsychologist regarding brain damage allegedly suffered by the plaintiff, Mary K. Sanchez, in an automobile accident.

This court, sitting in division, originally held in a majority opinion that the trial court had not abused its discretion when it limited the neuropsychologist's testimony regarding plaintiff's alleged brain damage. *Sanchez v. Derby*, 228 Neb. 497, 423 N.W.2d 420 (1988). The majority of the panel held that the neuropsychologist's opinion, as stated in the offer of proof, was couched in alternatives, one of which was no more than a "possibility" and did not meet the certainty requirements espoused in *Hare v. Watts Trucking Service*, 220 Neb. 403, 370 N.W.2d 143 (1985); *Scott v. State*, 218 Neb. 195, 352 N.W.2d 890 (1984); and *Lane v. State Farm Mut. Automobile Ins. Co.*,

209 Neb. 396, 308 N.W.2d 503 (1981).

We vacate the majority holding of the division panel of this court, find the trial court abused its discretion in failing to admit the neuropsychologist's expert opinion, reverse the trial court's ruling thereon, and remand the cause for a new trial.

Sanchez sued Frank N. Derby and Blanche Conrad, defendants, for injuries Sanchez allegedly sustained as a result of a rear end automobile collision on Interstate 680 in Omaha on April 21, 1982. Following trial, the jury awarded Sanchez $4,808.20, to be paid by both defendants.

At trial, Sanchez called Charles J. Golden, Ph.D., a board-certified neuropsychologist, as an expert witness. Sanchez had been referred to Dr. Golden by her attorney and by Dr. Harold Ladwig, her neurologist. Dr. Golden, a licensed psychologist, first evaluated Sanchez in November 1984. He interviewed and tested Sanchez. Dr. Golden reviewed plaintiff's medical records, which included the history of care and treatment at Bergan Mercy Hospital, Immanuel Medical Center, and Omaha Neurological Clinic, as well as records from Sanchez' mental health counselor, a psychiatrist, and her obstetrician-gynecologist. Dr. Golden determined that Sanchez was suffering from a chronic pain syndrome. That means she had a pain problem for more than 6 months which had not responded to medical treatment, and that it "was not going away."

In ruling upon an objection to the neuropsychologist's opinion, the trial judge held that Dr. Golden would only be permitted to testify that the pain plaintiff was experiencing was tied to a soft-tissue injury received in the accident.

Plaintiff claims that Dr. Golden should have been permitted to testify to his opinion as it is contained in the following offer of proof.

> [T]he client [Sanchez] presents a clinical picture of a somewhat histrionic individual whose premorbid status was that of an individual with marginal coping skills and resources. Since the accident of April 1982 there has been a significant decline in level of function as well as an exacerbation of her histrionic tendencies. The most probable causes [sic] of this behavioral change is either (1)

a combination of a post traumatic stress disorder and a reaction to chronic pain in a previously marginal personality or (2) an organic affective disorder secondary to mild subcortical brain injury (around the orbital frontal areas) which can occur in accidents such as this.

While it is possible at this time to state firmly that one of these causes is indeed the most probable cause of her problems as the problems clearly date from the time of the accident as well as follow the pattern expected in such disorders, it is not possible to choose between them at present. The type of mild subcortical brain dysfunction which could cause this type of injury cannot [by] itself be easily identified by objective tests which are currently clinically available. Although the pattern of the disorder (especially the denial, the inability to recognize the nature of her problems, and the somewhat primitive thought patterns associated with her analysis of emotion) is consistent with such a diagnosis, it can also represent in this woman an intensification because of a post traumatic stress disorder related to the accident itself and the chronic physical pain which ensued from the accident.

The narrow question on appeal is not whether Dr. Golden is qualified as an expert regarding brain damage, but whether the trial judge abused his discretion in excluding the testimony of Dr. Golden on the particular issue in question.

Dispositive of that question is whether Dr. Golden's excluded testimony would supply specialized knowledge which would aid the jury in understanding the evidence or in determining a fact in issue. Neb. Rev. Stat. § 27-702 (Reissue 1985).

The admission or exclusion of expert testimony is within the discretion of the trial court. To obtain reversal on the grounds of the exclusion of evidence, an abuse of discretion must be shown. See, *Lincoln East Bancshares v. Rierden*, 225 Neb. 440, 406 N.W.2d 337 (1987); *Bay v. House*, 226 Neb. 521, 412 N.W.2d 466 (1987); *Johannes v. McNeil Real Estate Fund VIII*, 225 Neb. 283, 404 N.W.2d 424 (1987); *Aetna Cas. & Surety Co. v. Nielsen*, 222 Neb. 92, 382 N.W.2d 328 (1986); *State v. Schenck*, 222 Neb. 523, 384 N.W.2d 642 (1986).

The trial judge found that to allow Dr. Golden's opinion

testimony with respect to the cause of Sanchez' behavioral change would be to invite a jury to speculate on the testimony of an expert.

Dr. Golden was prepared to testify that one of only two probable causes existed to explain plaintiff's behavior changes. Both of these causes related to a traumatic brain injury, and both would be compensable. This court noted in *Marion v. American Smelting & Refining Co.*, 192 Neb. 457, 460, 222 N.W.2d 366, 368-69 (1974), that "it is impossible for a reputable doctor to testify with absolute certainty that one cause and one cause alone is the reason for [a] disability. Absolute certainty is not required. Medical diagnosis is not that exact a science."

Dr. Golden's opinion was based on facts ascertained from interviews, tests, and a medical history review, which ultimately resulted in a diagnosis based on the expertise of this witness. Any questioning of the basis for Dr. Golden's opinion should go to its weight and credibility, not to its admissibility.

The trial court abused its discretion when it ruled against receiving Dr. Golden's opinion testimony.

REVERSED AND REMANDED FOR A NEW TRIAL
ON THE ISSUE OF DAMAGES.

FAHRNBRUCH, J., dissenting.

I must respectfully dissent from the majority opinion on rehearing. As pointed out in the original majority opinion and in my concurrence in *Sanchez v. Derby*, 228 Neb. 497, 423 N.W.2d 420 (1988), Dr. Golden was prepared to testify

The most probable causes [sic] of [the plaintiff's] behavioral change is either (1) a combination of a post traumatic stress disorder and a reaction to chronic pain in a previously marginal personality *or* (2) an organic affective disorder secondary to mild subcortical brain injury (around the orbital frontal areas) which *can* occur in accidents

such as that in which the plaintiff was involved. (Emphasis supplied.)

Dr. Golden's testimony would have also been

While it is possible at this time to state firmly that one of these causes is indeed the most probable cause of her [plaintiff's] problems as the problems clearly date from

the time of the accident as well as follow the pattern expected in such disorders, it is not possible to choose between them at present.

Under Dr. Golden's second "probable cause" of plaintiff's problems (mild subcortical brain injury), he only theorizes that the brain injury *can* occur in accidents, not that there was a reasonable degree of certainty that it did occur in the accident in which the plaintiff was involved.

The trial court was correct in finding that to allow Dr. Golden's opinion testimony with respect to the cause of Sanchez' behavioral change would be to invite a jury to speculate on the proximate cause of Sanchez' behavioral problems.

The ruling of the trial court should be affirmed.

BOSLAUGH and CAPORALE, JJ., join in this dissent.